# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

MARLEE WILLIAMS, individually,

        Plaintiff,

    vs.

OFFICER WILKINS SANTANA,
individually,

        Defendant.

**Case No.: 6:26-cv-38**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, MARLEE WILLIAMS, sue Defendant, OFFICER WILKINS SANTANA, and allege as follows:

## NATURE OF THE ACTION

1.    This is a federal civil rights action for damages, pursuant to the Fourth Amendment to the United States Constitution, enforced through the Civil Rights Act, 42 U.S.C. §§ 1983, 1988, to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

## PARTIES

2.    Plaintiff, MARLEE WILLIAMS, is *sui juris* and is a citizen of the State of Florida.

**3.**    Defendant, OFFICER WILKINS SANTANA (Badge 728), is *sui juris* and is a citizen of the State of Florida.  Officer Santana was, at all relevant times, a

law enforcement officer employed by the Altamonte Springs Police Department, acting under color of state law.

## SUBJECT MATTER JURISDICTION

4.      This Court has jurisdiction over the subject matter in this action, pursuant to 28 U.S.C. §§ 1331, 1343, because this action involves federal questions raised by the Civil Rights Act, 42 U.S.C. §§ 1983, 1988, *et seq.*

## PERSONAL JURISDICTION

5.      This Court has general *in personam* jurisdiction over Officer Santana because he is found in the State of Florida.

## VENUE

6.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), because Officer Santana resides in the State of Florida and in the bounds of the Middle District of Florida.

7.      As an independent and alternative basis, venue is also proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims accrued in Seminole County, Florida; more specifically, the claims accrued around SR 436 & Essex Avenue, Altamonte Springs, FL 32701.

8.      The Orlando Division of this Court is proper, pursuant to Local Rule 1.04(a), because the claims accrued in Seminole County, FL.

## GENERAL ALLEGATIONS

9.      On or about April 27, 2025, at approximately 8:59 PM, Williams was driving and stopped at SR 436 & Essex Avenue, Altamonte Springs, FL 32701 by Officer Santana.

10.      Williams was alone in her vehicle.

11.      Officer Santana was alone in his vehicle.

12.      At the time, Officer Santana was patrolling the area when he observed Williams in her vehicle, and she stopped at a traffic light adjacent to Officer Santana.

13.      The incident was captured on Officer Santana's bodycam.

14.      According to Officer Santana, as the traffic light turned green, allegedly, Williams started to "merge" into Officer Santana's lane and, according to him, that is a violation of Section 316.089.

15.      Section 316.089 states that:

> (1) A vehicle shall be driven <u>as nearly as practicable</u> entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

16.      At the time of the incident, Williams was driving "as practicable entirely within a single lane."

17.      Williams did not make an illegal lane change, and Officer Santana lacked reasonable suspicion to believe that any violation of Section 316.089 occurred.

18.      Essentially, Officer Santana was unhappy that Williams merged, which caused him to slow down his speed.

19.    Officer Santana then stopped Williams in a parking lot adjacent to a Burger King.

20.    When Williams noticed the siren and lights, she immediately used her blinker and stopped at a safe area.

21.    Officer Santana got out of his vehicle, approaching Williams on her passenger side.

22.    Williams rolled her passenger window about half down to speak with Officer Santana.

23.    Officer Santana, twice, demanded Williams to roll down her entire passenger window.

24.    Williams asked Officer Santana why he stopped her.

25.    Officer Santana refused to state the reason.

26.    He then walked around Williams' vehicle on the driver's side to speak with Williams.

27.    Williams, who was in the middle of pulling her vehicle registration and insurance policy card, rolled down her driver's window, again, about half down to speak with Officer Santana.

28.    Officer Santana, twice, demanded Williams to roll down her driver's window.

29.    The incident escalated when Officer Santana raised his voice and demanded that Williams roll down her entire driver's window.

30.    Williams was scared due to Officer Santana's aggressive manner, who still refused to state why he stopped Williams.

31.    Officer Santana then forcibly opened Williams' driver's door and grabbed her left arm.

32.    He then pulled Williams out of her vehicle, slamming her head and right rib area on the hard concrete.

33.    At the time Officer Santana forcibly opened Williams's door and seized her, he lacked reasonable suspicion or probable cause to believe that Williams had committed any crime:









COMPLAINT - 6

34. The video depicts quick unjustified escalation, no de-escalation effort, and unwarranted force used on a small, nonthreatening woman asking simple legal questions.

35. Williams started to scream in pain about her injuries.

36. Officer Santana put handcuffs on Williams on her back and arrested Williams.

37. There were no witnesses other than Williams and Officer Santana.

38. Officer Santana charged Williams with resisting an officer without violence.

39. EMT personnel then attended to Williams's pain.

40. Due to the physical injury, Officer Santana escorted Williams to the emergency room.  As a result, Williams lost her liberty.

41. Williams's emergency room doctor confirmed her right "rib contusion" and her "blunt head trauma" as a result of being "forcibly removed from her vehicle causing her head to hit the pavement."

42. On April 30, 2025, the State filed an Information, stating that Williams allegedly "resisted an officer without violence," pursuant to Section 843.02, Florida Statutes.

43. However, on October 20, 2025, the State dismissed all charges via a *nolle prosequi*.

44. All general and statutory conditions precedent to this action have either occurred or have been waived by operation of law.

COMPLAINT - 7

45.    Williams demands a trial by jury on all issues so triable.

46.    Williams is entitled to recover her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT I
### Violation of the Fourth Amendment – Excessive Force
### Civil Rights Act, 42 U.S.C. § 1983, *et seq.*
### Officer Santana, *in his Individual Capacity*

47.    Williams re-alleges the allegations set forth in paragraphs 1 through 46 above, as though fully alleged herein.

48.    Officer Santana, while acting in the course and scope of his duties and under color of state law, encountered Williams.

49.    Officer Santana is a "person" within the meaning of the Civil Rights Act.

50.    Williams's height is 5'02", and her weight is approximately 100 pounds.

51.    At the time of the incident, Williams was not actively resisting, attempting to flee, or posing an immediate threat to the safety of Officer Santana or others.

52.    At best, Williams was passively resisting Officer Santana's commands. Passive resistance does not justify significant force.

53.    Williams's act of partially lowering her window while retrieving her documentation did not constitute resistance, obstruction, or interference under Florida or federal law and did not justify any use of force.

54.    Minor or nonviolent offenses weigh against significant force.

55.    If the suspect is unarmed, stationary, or otherwise non-threatening, as here, this weighs heavily against force.

56.    Despite the absence of any lawful justification, Officer Santana used excessive force against Williams, particularly by forcing Williams' head and right rib area to hit the hard concrete.

57.    Officer Santana's force was not proportional to the need.

58.    The force used was objectively unreasonable under the circumstances and disproportionate to any legitimate law enforcement need.

59.    Williams has suffered ongoing physical therapy as a result of her head and body being slammed on the hard concrete.  Her medical file confirms her physical injuries on both cardiovascular and neurological trauma.

60.    As a direct and proximate result of Officer Santana's unlawful seizure and arrest, Williams suffered loss of liberty, physical pain and injury, emotional distress, humiliation, mental anguish, and other damages to be proven at trial.

61.    Punitive damages are available against Officer Santana and are hereby claimed because he was reckless or had callous indifference to Williams's constitutional rights.

62.    At all relevant times, clearly established law prohibited the detention or arrest of a motorist absent reasonable suspicion or probable cause and prohibited arrest based solely on verbal questioning or non-threatening, nonviolent conduct. No reasonable officer in Officer Santana's position could have believed that the

seizure and arrest of Williams were lawful under the circumstances.  Officer Santana is therefore not entitled to qualified immunity.

**WHEREFORE,** Plaintiff, MARLEE WILLIAMS, demands judgment against Defendant, OFFICER WILKINS SANTANA, and respectfully requests (i) an entry of an Order awarding judgment in favor of Williams and against Officer Santana; (ii) awarding nominal and compensatory damages in an amount to be determined by the jury; (iii) awarding punitive damages against Officer Santana in an amount to be determined by the jury; (iv) awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and (v) any such other, further, and different relief as the Court deems appropriate and just.

**COUNT II**
**Violation of the Fourth Amendment – Unlawful Seizure/False Arrest**
**Civil Rights Act, 42 U.S.C. § 1983,** *et seq.*
**Officer Santana,** *in his Individual Capacity*

63.    Williams re-alleges the allegations set forth in paragraphs 1 through 46 above, as though fully alleged herein.

64.    At all relevant times, Officer Santana was acting under color of state law and within the course and scope of his employment as a law enforcement officer.

65.    The Fourth Amendment to the United States Constitution guarantees individuals the right to be free from unreasonable searches and seizures, including arrest or detention without reasonable suspicion or probable cause.

66.    Officer Santana seized Williams within the meaning of the Fourth Amendment when he activated his emergency lights, stopped her vehicle, forcibly

COMPLAINT - 10

opened her driver's door, physically removed her from the vehicle, handcuffed her, and deprived her of her liberty.

67.    At the time Officer Santana initiated the traffic stop, he lacked reasonable suspicion to believe that Williams had committed any crime, traffic infraction, or other offense.

68.    Williams was driving as nearly as practicable within a single lane, and no objective facts supported a violation of Section 316.089 or any other provision of Florida law.

69.    Williams's act of questioning the basis for the stop, partially lowering her window, and retrieving her registration and insurance documentation did not constitute resistance, obstruction, or interference with a law enforcement officer.

70.    At the time Officer Santana forcibly removed Williams from her vehicle and placed her in handcuffs, he lacked probable cause to believe that Williams had committed any criminal offense, including resisting an officer without violence.

71.    Williams did not engage in conduct that would lead a reasonable officer to believe she posed a threat, was attempting to flee, or had committed a crime.

72.    Officer Santana's seizure and arrest of Williams were therefore unlawful and unreasonable under the Fourth Amendment.

73.    The subsequent charge of resisting an officer without violence was predicated solely on Williams's verbal conduct and her exercise of constitutional rights and was not supported by probable cause.

COMPLAINT - 11

74.    The criminal charge against Williams was later dismissed by the State, further confirming the absence of probable cause for her arrest.

75.    As a direct and proximate result of Officer Santana's unlawful seizure and arrest, Williams suffered loss of liberty, physical pain and injury, emotional distress, humiliation, mental anguish, and other damages to be proven at trial.

76.    Punitive damages are available against Officer Santana and are hereby claimed because he was reckless or had callous indifference to Williams's constitutional rights.

77.    At all relevant times, clearly established law prohibited the detention or arrest of a motorist absent reasonable suspicion or probable cause and prohibited arrest based solely on verbal questioning or non-threatening, nonviolent conduct. No reasonable officer in Officer Santana's position could have believed that the seizure and arrest of Williams were lawful under the circumstances. Officer Santana is therefore not entitled to qualified immunity.

**WHEREFORE,** Plaintiff, MARLEE WILLIAMS, demands judgment against Defendant, OFFICER WILKINS SANTANA, and respectfully requests (i) an entry of an Order awarding judgment in favor of Williams and against Officer Santana; (ii) awarding nominal and compensatory damages in an amount to be determined by the jury; (iii) awarding punitive damages against Officer Santana in an amount to be determined by the jury; (iv) awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and (v) any such other, further, and different relief as the Court deems appropriate and just.

**DATED:** January 8, 2026

Respectfully submitted,

*Coleman Watson*

**Coleman W. Watson, Esq.**
Florida Bar. No. 0087288
California Bar No. 266015
Georgia Bar No. 317133
New York Bar No. 4850004
Email: coleman@alexanderhero.com

**ALEXANDER HERO**
20 North Orange Avenue, 11th Floor
Orlando, FL 32801
Tel: (407) 543-0111

*Attorneys for Plaintiff*

COMPLAINT - 13